## VALIDITY OF AN ISSUE OF MUNICIPAL BONDS FOR PURCHASE OF AN ELECTRIC LIGHT PLANT.

Common Pleas Court of Cuyahoga County.

W. B. DRUM, A TAX-PAYER, ON BEHALF OF THE CITY OF CLEVE-
LAND, V. THE CITY OF CLEVELAND ET AL.

Decided, June 10, 1912.

*Municipal Corporations—Proceedings for an Issue of Bonds in Excess
of Two and One-half Per Cent. of the Aggregate Listed Value of
Taxable Property—Application of the Crosser Act—Construction of
Paragraph 12 of Section 3939.*

1. Paragraph 12 of Section 3939, P. & A. Anno. G. C., approved by the
Governor on May 26, 1911, means the same and is reconcilable
with the same paragraph as it appears in the act approved by the
Governor on May 22, 1911,* the legislative intent being that mu-
nicipalities should have the power to purchase or erect electric
light plants for the purpose of furnishing light to the municipality
and its inhabitants; and it follows that an ordinance providing
for the erection of such a plant and the supplying of light there-
from does not contain a dual purpose and is not subject to attack
on that account.

2. An election for the purpose of authorizing a municipality to issue
bonds in excess of two and one-half per cent. of the aggregate
value of the property listed for taxation within the municipality is
rendered invalid where less than sixty days elapsed between the
passage of the resolution declaring the necessity of the issuance
of said bonds and the election approving said issue.

3. The fact that the resolution declaring the necessity for an issue of
bonds recited that such necessity existed "in the fiscal year" dur-
ing which the resolution was adopted, is not rendered invalid by
reason of the fact that the proceedings with reference to such bond
issue were not completed until after another fiscal year had begun.

4. An ordinance providing for the expenditure of money does not be-
come operative under the Crosser law, Section 4227-1 P. & A. Anno.
G. C., until sixty days after its passage; and advertisement for
the sale of the bonds from which the funds for such expenditure
are to be derived is without authority of law until the sixty days
have expired, and the bids can not lawfully be opened and the
bonds sold under an advertisement thus prematurely made.

*Both of these acts appear in P. & A. Anno. G. C. as Section 3939.

*Squire, Sanders & Dempsey,* for plaintiff.
*City Solicitor,* contra.

COLLISTER, J.

This is an action brought by the plaintiff, a tax-payer, on behalf of the city of Cleveland, against said city and certain of its officers, to restrain said city and said officers from doing any act in consummation of the sale or issuance of certain bonds named and described in the petition.

It is averred in the petition that the solicitor of said city was by plaintiff requested in writing to bring the action, and refused to bring it.

The petition by proper averments pleads the corporate existence of the city, and the official positions of the other defendants.

The petition avers that on the 18th day of September, 1911, the council of said city adopted a resolution declaring the necessity of issuing bonds of said city in excess of an aggregate of 2½ per cent. of the total value of all property in the city of Cleveland, listed and assessed for taxation, for the purpose of erecting electric light works, and for supplying light to the corporation and inhabitants thereof, and purchasing the necessary land therefor. A copy of said resolution is attached to the petition, said copy being in words and figures following, to-wit:

"Resolution declaring the necessity of issuing bonds of the city of Cleveland in excess of an aggregate of 2½ per cent. of the total value of all property in the city of Cleveland, as listed and assessed for taxation for the purpose of erecting light works and for supplying light to the corporation and inhabitants thereof, and for the purchase of necessary land therefor.

"Be it Resolved, by the council of the city of Cleveland, state of Ohio, two-thirds of all members elected and appointed thereto concurring, that it is necessary to issue and sell bonds of the city of Cleveland in the fiscal year beginning January 1, 1911, for the purpose of erecting electric light works, and for supplying light to the corporation and the inhabitants thereof, and for purchasing the necessary land therefor, in an amount in excess of two and one-half per cent. (2½ per cent.) of the total value of all property in the city of Cleveland as listed and assessed for taxation, to-wit, in the sum of two million dollars ($2,000,000); and that the question of issuing and selling said bonds of said

city in excess of said two and one-half (2½) per cent. as afore-
said, that is, in the sum aforesaid, be submitted to a vote of the
qualified electors of said city, at the next regular election, occur-
ring after the passage of this resolution, to-wit, on November 7,
1911, at the regular place or places of voting in said city, as estab-
lished by the board of deputy state supervisors and inspectors of
elections of Cuyahoga county, Ohio, between the hours of 5:30
A. M. and 5:30 P. M.; that said election shall be conducted and
certified in the manner provided by law; that the question
whether such bonds shall be issued shall be put in the form fol-
lowing, to-wit: 'Shall the bonds of the city of Cleveland be is-
sued in the sum of $2,000,000 for the purpose of erecting elec-
tric light works, and for supplying light to the corporation and
the inhabitants thereof, and for purchasing the necessary land
therefor'; and those who vote in favor of the proposition shall
have written or printed on their ballots the words: 'For the
issue of bonds'; and those who vote against the same shall have
written or printed on their ballots the words: 'Against the is-
sue of bonds'; that the mayor be and he is hereby directed to
give public notice of the time and place of holding said election
in the manner provided by law, and that the clerk be and he is
hereby directed to certify a copy of this resolution to the board
of deputy state supervisors and inspectors of elections of Cuya-
hoga county, Ohio.

"R. Y. McCRAY, <em>City Clerk.</em>"

The petition avers that said resolution was, on September 19,
1911, approved by the acting mayor of the city; and on said
19th day of September, 1911, the said resolution was certified to
the board of deputy state supervisors and inspectors of elections
of Cuyahoga county. That on the 6th, 13th, 20th and 27th days
of October, 1911, the then mayor of said city caused to be pub-
lished a notice of election on the question as to whether or not
said bonds should be issued. A copy of said notice is attached
to the petition, and is in words and figures following:

"NOTICE OF ELECTION. Notice is hereby given that in pur-
suance of a resolution of the council of the city of Cleveland,
passed September 18, 1911, there will be submitted to the quali-
fied electors of said city at the general election in the city of
Cleveland on the 7th day of November, 1911, between the hours
of 5:30 o'clock A. M. and 5:30 o'clock P. M., standard time, the
question of issuing bonds of said city in the fiscal years begin-

ning January 1, 1911, in an amount in excess of an aggregate of two and one-half per cent. (2½ per cent.) of the total value of all property in the city of Cleveland, as listed and assessed for taxation; that is to say, in the sum of two million dollars ($2,-000,000), for the purpose of erecting electric light works and for supplying light to the corporation and inhabitants thereof and for the purchase of the necessary land therefor. Those who vote in favor of the proposition of issuing bonds as aforesaid shall have written or printed on their ballots 'For the issue of bonds,' and those who vote against the same shall have written or printed on their ballots 'Against the issue of bonds.'

"October 6, 1911.            HERMAN C. BAEHR, *Mayor*."

The petition avers that there was submitted to the voters of the city of Cleveland, at the regular election held on the 7th day of November, 1911, a ballot on which was written the following:

"Shall the bonds of the city of Cleveland be issued in the sum of two million dollars, for the purpose of erecting electric light works and for supplying light to the corporation and the inhabitants thereof, and for purchasing the necessary land therefor?

"For the issue of the bonds.

"Against the issue of the bonds."

That at said election more than two-thirds of those voting on said question voted in favor of the issue of said bonds.

The petition further avers, that on the 19th day of February, 1912, the city council of said city passed an ordinance, No. 23930, being "An ordinance to issue bonds in the sum of one million dollars ($1,000,000), for the purpose of erecting electric light works and for supplying light to the corporation and the inhabitants thereof, and for the purchase of the necessary land therefor."

A copy of said ordinance is attached to the petition, and is in words and figures following, to-wit:

"ORDINANCE No. 23930.

"An Ordinance to issue bonds in the sum of one million dollars for the purpose of erecting electric light works and for supplying light to the corporation and inhabitants thereof, and for the purchase of necessary land therefor.

"WHEREAS, at the general election held in the city of Cleveland, state of Ohio, on the 7th day of November, 1911, the ques-

tion of issuing bonds of the said city of Cleveland, Ohio, in the sum of two million dollars ($2,000,000) for the purpose of erecting electric light works and for supplying light to the corporation and inhabitants thereof, and for the purchase of necessary land therefor, the same being an amount in excess of two and one-half (2½) per cent. of the total value of all property of the city of Cleveland as listed and assessed for taxation, was submitted to the qualified voters of said city; and

"WHEREAS, two-thirds of the voters voting at such election upon the question of issuing such bonds in favor thereof; now, therefore,

"*Be it Ordained,* by the council of the city of Cleveland, state of Ohio, two-thirds of all members elected thereto concurring, that

"Section 1.   It is deemed necessary to issue and sell bonds as herein provided.

"Sec. 2.   That under authority of law bonds of the city of Cleveland be issued to the amount of one million dollars ($1,-000,000) for the purpose of erecting electric light works and for supplying light to the corporation and inhabitants thereof, and for the purchase of necessary land therefor.

"Sec. 3.   That said bonds shall be designated as 'electric light bonds'; shall be of the denomination of one thousand dollars ($1,000) each; shall be dated April 1, 1912; shall be drawn to mature April 1, 1947, and shall bear interest from the 1st day of April, 1912, at the rate of four (4) per cent. per annum, payable semi-annually upon the presentation and surrender of the attached coupons, signed by the city treasurer.

"Sec. 4.   Said bonds shall be signed by the mayor and city auditor, prepared by the city solicitor, sealed with the city's seal, and recorded in the office of the sinking fund trustees.   Said bonds shall express upon their face the purpose for which they are issued, the fact that they are issued pursuant to law and ordinance, and they shall be made payable, both principal and interest, at the American Exchange National Bank, in the city of New York.

"Sec. 5.   That the faith and credit of the city of Cleveland are hereby pledged for the payment of both principal and interest of the bonds hereinbefore described at maturity.

"Sec. 6.   This ordinance shall take effect and be in force from and after the earliest period allowed by law.

"Passed February 19, 1912.

"CHARLES W. LAPP,

"R. E. COLLINS, *City Clerk.*        "*President of the Council.*

"Approved by the mayor February 21, 1912."

That said ordinance was approved by the mayor on February 21, 1912.

The petition avers that the defendants, assuming to act under the pretended authority conferred by said resolution of September 18, 1911, and the vote of the electors on November 7, 1911, and the ordinance of February 19, 1911, have advertised that bids would be received at the auditor's office until 12 o'clock noon on April 8, 1912, for the purchase of $1,000,000 four per cent. city of Cleveland electric light coupon bonds, maturing April 1, 1947, and drawing interest from April 1, 1912.

Plaintiff further says in his petition:

"That the proposed issue and sale of said bonds under the pretended authority of said resolution of September 18th, 1911, and the proceedings had pursuant thereto, and said ordinance of February 19th, 1912, are illegal, unauthorized, and constitute an abuse of corporate power by said city, in the following respects, to-wit:

"(a) For the reason that the council of the city of Cleveland was without power to adopt the resolution of September 18th, 1911, and submit to the electors the question of issuing bonds for the dual purpose of erecting an electric light works and for supplying light to the corporation and the inhabitants thereof.

"(b) That the election held November 7th, 1911, was void, for the reason that sixty days had not intervened between the passage of said resolution on September 18th, 1911, and the date of said election.

"(c) That the said ordinance passed on the 19th day of February, 1912, and the said act of the defendants in thus advertising for bids for said bonds, are void, for the reason that said resolution of September 18th, 1911, provides only for the issuance and sale of bonds during the fiscal year beginning January 1, 1911.

"(d) That the said ordinance No. 23930 will in no event become operative until sixty days after its passage, to-wit, the 18th day of April, 1912."

Plaintiff further says that the defendants will, unless enjoined by the order of this court, proceed to accept bids for said bonds and award the same to the highest bidder, and will execute and deliver to said highest bidder the bonds of the city of Cleveland

to the extent of one million dollars; all of which acts plaintiff
avers are unlawful and without any valid authority in the city
of Cleveland whatsoever.

Wherefore, plaintiff prays that a temporary order may issue,
to be in effect during the pendency of this action, enjoining the
defendants and each of them, and their agents, attorneys, serv-
ants and employes, from either directly or indirectly doing any
act in consummation of the sale or issuance of said bonds or any
part of them; and that on final hearing said injunction may be
made permanent; and for all other and further relief to which
the plaintiff in equity and good conscience may be entitled.

To that petition the defendants file a demurrer, in the follow-
ing language:

"Now come the defendants in the above entitled action and
demur to the petition of the plaintiff filed herein, upon the
ground and for the reasons that said petition does not contain
facts sufficient to constitute a cause of action or to entitle the
plaintiff to the relief prayed for."

The defendants claim, by the filing of the demurrer that, ad-
mitting all the averments of fact contained in the petition to be
true, yet under the law the plaintiff is not entitled to the relief
prayed for.

As above recited, the plaintiff claims the proposed sale and
issue of said bonds are illegal and unauthorized, and constitute
an abuse of corporate power in four respects, designated in the
petition *a, b, c* and *d*. Let us take these questions up in order.

(*a*) It is the claim of the plaintiff that in the language of
the ordinance of September 18, 1911, "for the purpose of erect-
ing electric light works and for supplying light to the corpora-
tion and the inhabitants thereof," and in the same language on
the ballot submitted to the voters on November 7, 1911, is found
a *dual* or *two* purposes, to-wit, (1) the issuing of bonds "for the
purpose of erecting electric light works," and (2) the issuing of
bonds "for the purpose of supplying light to the corporation
and the inhabitants thereof"; that is, the proceeds from the sale
of the bonds could be used to *erect* electric light works, and for
*maintaining* or *operating* electric light works when erected; and

that the amount that would be used for each is not separated in the resolution of September 18, 1911, nor on the ballot aforesaid; and that a voter, if he was in favor of one and against the other, could not vote for the one he favored without also voting for the one he was not in favor of.

If there were two ''purposes'' on said ballot and in said resolution of September 18, 1911, then the contention of the plaintiff must prevail, for the Supreme Court of the state has decided that question in favor of the contention of the plaintiff. See *The Elyria Gas & Water Company* v. *City of Elyria*, 57 O. S., 374, paragraphs 1, 2 and 4 of the syllabus reading as follows:

1. ''The proceedings of the council of a municipal corporation must, in order to be valid, be within the power conferred on it, and in substantial conformity with the statutes regulating them.''

2. ''The proper adoption, by the council, of the resolution declaring it to be necessary to issue and sell the bonds of the corporation for a specific purpose authorized by Section 2835 of the Revised Statutes, and providing therein for the submission of the question of their issue to the electors at an election to be held for that purpose, is essential to the validity of all subsequent proceedings, and without which there can be no lawful issue or sale of the bonds.''

4. ''The purchase of water works, and the erection of new ones, are distinct measures, requiring different proceedings; and a resolution of council which combines both as one, and provides for the submission, in that form, of the question of the issue and sale of the bonds of the municipality for both purposes combined, is unauthorized, and ineffectual for either purpose; nor can it be made effectual for either by the elimination of the other in the proceedings subsequent to the resolution. It is the policy of the statute that each measure for which it is proposed to issue and sell the bonds of the corporation shall stand on its own merits, unaided by combination with others, and that it be voted upon as an indpendent measure, by the council and electors, uninfluenced by such combination.''

See also opinion in that case on pages 380 and 381.

The following sections of the General Code have application to this branch of the case now under discussion:

Section 3912 of the General Code reads as follows:

"Municipal corporations shall have special power to borrow money and to maintain and protect a sinking fund. The power to borrow money shall be exercised in the manner provided in this chapter."

Section 3918 of the General Code reads as follows:

"Bonds issued under authority of this chapter shall express upon their face the purpose for which they were issued, and under what ordinance."

In Section 2835 of the Revised Statutes of Ohio, as amended April 21, 1893 (90 O. L., 229), appears for the first time any reference to authority given a municipality to issue bonds on the subject under discussion. That section, as then amended, so far as it applies to this bond issue for the purpose under discussion, reads as follows:

"2835. The trustees of any township or hamlet or the council of any municipal corporation may issue and sell their bonds, in amount and denominations such as they may deem necessary for the special purpose in view, whenever it is desired by the voters of such township or municipal corporation to make any of the following improvements or to provide for any of the following public purposes:

"1. For procuring the real estate and right of way for any improvement authorized by this section.

"16. For erecting or purchasing gas works *and* electric light works, and for supplying light to the township or corporation and the inhabitants thereof."

Said section was again amended April 29, 1902 (95 O. L., page 318); and said section was again amended April 23, 1904 (97 O. L., page 291); and was again amended March 22, 1906 (98 O. L., page 63); and was again amended March 3, 1909 (100 O. L., page 53).

On February 15, 1910, the General Code went into effect, and said Section 2835, amended as aforesaid, found its number therein as Section 3939.

In the act of April 21, 1893, the subdivision of the section under discussion was No. 16. In each subsequent amendment and in said Section 3939 the number of said subdivision is 12. The only difference in the wording of said subdivision 16 from the

wording of said subdivision 12, in the various amendments and in the General Code aforesaid, is that in said subdivision 16 the word "and" is used between the words "gas works" and the words "electric light works"; and in said subdivision 12 in each of said amendments and in said section of the General Code the word "or" is used between the words aforesaid.

On May 15, 1911, said Section 3939 was amended, and in such amendment said subdivision 12 remained unchanged, and reads as follows:

"12. For erecting or purchasing gas works or electric light works, and for supplying light to the corporation and the inhabitants thereof."

This act was approved by the Governor on May 22, 1911.

On the same day, to-wit, May 15, 1911, the said Section 3939 was also amended, and in such amendment said subdivision 12 reads as follows:

"12. For erecting or purchasing gas works or works for the generation and transmission of electricity for the supplying of gas or electricity to the corporation and the inhabitants thereof."

This act was approved by the Governor May 26, 1911.

Is effect to be given to Section 12 of the act of May 15, 1911, approved by the Governor on May 22, 1911, or to said section of the act of May 15, 1911, approved by the Governor May 26, 1911. If the two are irreconcilable, then effect is to be given to the later act, to-wit, the act approved by the Governor May 26, 1911.

See *State, ex rel,* v. *Halladay,* 63 O. S., 165, the syllabus of which is as follows:

"1. In so far as the two statutes are irreconcilable, effect must be given to the one which is the later. A bill can not become a law until it has been signed by the presiding officer of each house; and when one bill was so signed after another bill was signed on the same day, the former is the later enactment."

It follows that if the two acts are reconcilable, then effect may be given to either, as in such case they would mean the same thing.

Are these two acts irreconcilable?

Said Section 12 of the act approved May 22, 1911, reads as follows:

"For erecting or purchasing gas works or electric light works, and for supplying light to the corporation and the inhabitants thereof."

Said Section 12 of the act approved May 26, 1911, reads as follows:

"For erecting or purchasing gas works or works for the generation and transmission of electricity, for the supplying of gas or electricity to the corporation and the inhabitants thereof."

In construing an enactment of the Legislature, the courts must, if they can consistently with the language used and the object to be accomplished, so construe such legislation as to carry out the legislative intent.

It seems to the court that said subdivision 12, as found in both the acts, means one and the same thing; that is, that bonds may be issued so that a plant can be erected for the purpose of supplying light to the corporation and its inhabitants. To give it the other construction would be to say that the city could issue bonds "for supplying light to the corporation and its inhabitants" without its becoming the owner of a plant by either purchase or erection; and that the city could issue bonds to "erect or purchase an electric light plant" for no other purpose whatever except the one "to erect or purchase it," and without any purpose to use it to supply light to the corporation and inhabitants thereof. The Legislature must have meant that the power to issue bonds to purchase or erect an electric light plant included, as part of such erection or purchase, the *purpose* to use said plant for furnishing light to the corporation and the inhabitants thereof.

This view of the acts means that they both mean the same thing; and the resolution of September 18, 1911, did not contain a *dual* or *two* purposes, nor did the ballot submitted to the voters on November 7, 1911.

So far as this feature of the case is concerned, the demurrer is sustained.

(b.)   It is claimed by the plaintiff that the election held November 7, 1911, was void, for the reason that sixty days had not intervened between the passage of the resolution of September 18, 1911, and the election of November 7, 1911.   In other words, plaintiff claims the provisions of the act of May 31, 1911 (102 O. L., 521, commonly called the Crosser act); apply to such a resolution as that of September 18, 1911.

The court then read said act, which appears in P. & A. Anno. General Code, as Section 42227-1.

The sections of the General Code, as found in Page & Adams Annotated General Code, bearing upon this branch of the case, are Section 3939, Section 1, subdivision 12; Section 3943, Section 3944, Section 3945, Section 3946 and Section 3947.   These sections are as follows:

"Section 3939.   Section 1.   When it deems it necessary, the council of a municipal corporation, by an affirmative vote of not less than two-thirds of the members elected or appointed thereto, by ordinance, may issue and sell bonds in such amounts and denominations, for such period of time, and at such rate of interest, not exceeding six per cent. per annum, as said council may determine, and in the manner provided by law, for any of the following specific purposes:

"12.   For erecting or purchasing gas works or works for the generation and transmission of electricity, for the supplying of gas or electricity to the corporation and the inhabitants thereof."

"Section 3943.   The council, by resolution passed by an affirmative vote of not less than two-thirds of all the members elected or appointed thereto, shall declare it necessary to issue and sell bonds of the corporation.   Such resolution shall state the purpose and amount of said issue, and shall fix a date upon which the question of issuing and selling such bonds shall be submitted to the electors of the corporation.   Council shall then cause a copy of such resolution to be certified to the deputy state supervisors of the county in which the corporation is situated.

"Section 3944.   The deputy state supervisors shall prepare the ballot and make the necessary arrangements for the submission of such question to the electors of such municipal corporation at the time fixed in the resolution.

"Section 3945.   The election shall be held at the regular place or places of voting in the municipality, and be conducted, canvassed and certified in like manner, except as otherwise provided

by law as regular elections in the municipal corporation for the election of officers thereof.

"Section 3946. Thirty days' notice of the election shall be given in one or more newspapers printed in the municipality once a week for four consecutive weeks prior thereto, stating the amount of bonds to be issued, and the purpose for which they are to be issued, and the time and place of holding the election. If no newspaper is printed therein, the notice shall be posted in a conspicuous place and published once a week for four consecutive weeks in a newspaper of general circulation in the township or municipal corporation.

"Section 3947. If two-thirds of the voters voting at such election upon the question of issuing the bonds vote in favor thereof, the bonds shall be issued. Those who vote in favor of the proposition shall have written or printed on their ballots, 'For the issue of bonds'; and those who vote against it shall have written or printed on their ballots, 'Against the issue of bonds.'"

These last quoted sections provide that when the council deems it necessary, it may, by a two-thirds vote, issue bonds for the purpose named in said subdivision 12 of Section 3939.

Section 3943 provides the initial step for issuing bonds, that is, the council shall, by an affirmative vote of not less than two-thirds of all the members elected or appointed thereto, declare the necessity for issuing bonds; and the resolution therefor shall state the purpose and amount of said issue, fix at date upon which the question of issuing and selling such bonds shall be submitted to the electors, and shall cause a copy of the resolution to be certified to the election officials.

Sections 3944, 3945 and 3946 provide for the procedure in the holding of an election on the question of the issuing of said bonds.

Section 3947 provides for the form of the ballot; and, further, that if two-thirds of those voting are in favor thereof, the bonds shall issue.

These sections seem to furnish a complete statutory scheme for obtaining the views of the voters on the question of issuing bonds. It is the opinion of the court that the referendum was enacted so that the people might have a check on municipal legislation if they care to use it; and it was not the purpose that

they should have a check on their own vote when once given.

Again, if the referendum law applied to such legislation as this, then during the sixty day period a *majority* of the voters could, by means of the referendum vote, authorize the issuing of bonds when it is clearly the policy of the law that bonds to be issued for the purposes we are discussing, and in excess of 2½ per cent. of the total indebtedness, must have the approval of *two-thirds* of the voters.

The two laws are too inconsistent for us to infer that the Legislature intended they should both apply to the same subject. Keeping each within its proper sphere, each can stand and serve its purpose.

So far as this feature of the case is concerned, the demurrer is sustained.

(c.) It is claimed that the ordinance of February 19, 1912, and the advertising for bids, are void, for the reason that said resolution of September 18, 1911, provides only for the issuance and sale of bonds during the fiscal year beginning January 1, 1911.

It is true the resolution of September 18, 1911, contains the words, "Be it resolved, by the council of the city of Cleveland, two-thirds of the members elected and appointed thereto concurring, that it is necessary to issue and sell bonds of the city of Cleveland in the fiscal year beginning January 1, 1911," yet I find nothing in the statutes requiring or authorizing such a limitation. On the argument of the demurrer, the court was not referred to any statute requiring or authorizing such a provision in the resolution, or to any decision of any court illustrative of such a provision in a resolution and the effect thereof. The main purposes of the resolution were, it seems to me, the declaration of the necessity to issue bonds, the purpose for which they were to be issued, the amount thereof, and the providing for a vote of the people on the question.

The recitation of a "fiscal year," in which the resolution declared the necessity existed for the issuing of the bonds, was not of the essence of the resolution. I have not had the time or opportunity to examine the books for any authority on the subject,

and, as before stated, the court was not referred to any by counsel. In the absence of such citation, it is fair to assume, at least for the purposes of this demurrer, that none exist in favor of plaintiff's contention, and that plaintiff does not place much faith in his contention in this regard.

So far as this feature of the case is concerned, the demurrer is sustained.

(d.) Plaintiff claims that the said ordinance No. 23930 will in no event become operative until sixty days after its passage, to-wit, the 18th day of April, 1912; and that the advertisement for the sale of said bonds had in the meantime was without authority of law, and that bids could not lawfully be opened for said bonds on April 8, 1912, the date provided therefor in said advertisement.

This raises the question whether or not the act of May 31, 1911 (102 O. L., 521), applies. That act is the one commonly called the Crosser act, and so much of it as is applicable to the case at bar has been referred to hereinbefore. The wording of the act is not as clear as could be desired, yet if the evident intention of the Legislature can be gathered from it, the court should give it effect, and leave its correction, if any be needed, to the Legislature.

In Ohio, by constitution, there are three co-ordinate branches of the government—the executive, legislative and judicial; and each performs a governmental function separate and different from and independent of the others. One should not usurp or attempt the functions of the other. The Legislature, acting within its proper constitutional limits, and presumably for the best interests of the people of the state, enacted the so-called Crosser act, thereby intending to render inoperative for the period of sixty days after its passage the kind of resolutions, ordinances and measures named in the act, enacted by the council of a municipal corporation. The language of the act is, "No resolution, ordinance or measure of any municipal corporation creating a right, involving *the expenditure of money,* shall become effective in less than sixty days after its passage." The court can not, if it keeps within its proper governmental func-

tion. (the judicial) legislate. It must, when an act of the Legislature is before it, in a legal proceeding, take the act as it finds it, and give it the effect, if possible, intended by the Legislature. This ordinance being an ordinance providing for the issuing of the bonds of the city, and pledging the faith and credit of the city for the payment of both the principal and interest of said bonds, is clearly within the spirit and letter of said act of May 31, 1911, and more particularly that part embraced in the words "involving the expenditure of money." By the plain provisions of the act, "no ordinance involving the expenditure of money shall become effective in less than sixty days after its passage." This ordinance, being an ordinance that involves the expenditure of money, could not, because of the existence of said act of May 31, 1911, become effective in less than sixty days after the passage of said ordinance. The language of the act is: "* * * no ordinance * * * creating a right, involving the expenditure of money * * * shall become effective in less than sixty days after its passage." If it can not become effective in less than sixty days, then until the expiration of said sixty days it is as if never enacted, and must lie dormant and without force, so that the people, if they deem it wise so to do, may bring into play during that period the referendum features of said act of May 31, 1911. It being, during that period, of no effect, it follows, as night the day, that no steps can be taken during that time in furtherance of the issuing of sale of said bonds. Therefore the act of the defendants in advertising said bonds for sale within said sixty-day period, and offering them for sale on April 8, 1912, said date being a date within said sixty-day period, was premature, contrary to the Crosser act, without warrant of law, and *ultra vires* of the city.

It follows that, so far as this feature of the case is concerned, the demurrer must be overruled.

This leaves the city in a situation that it may now pass an ordinance similar to ordinance No. 23930, and at the expiration of said referendum period advertise and sell said bonds.